### SECHRIST v VERES et

Ohio Common Pleas, Jefferson Co

Decided March 16, 1937

Jesse K. George, Steubenville, for plaintiff.

W. D. Downer, Steubenville, for defendants.

## OPINION

By CARL A. W. WEINMAN, J.

Prior to November 1, 1935, the family of Samuel Sechrist and the family of Joseph Veres lived on adjoining farms in the northern part of Jefferson County. On the 1st day of November, 1935, the defendant, Joseph Veres, shot and killed Eva Mae Sechrist. He is now serving a life sentence in the Ohio State Penitentiary for the crime of murder in the first degree. At the time of the killing of Eva Mae Sechrist the defendant, Joseph Veres, was the sole owner of certain real estate, being a farm comprising about 150 acres.

On November 8, 1935, while incarcerated in the county jail, the defendant, Joseph Veres, transferred the title to three separate tracts of real estate, being all of the real estate in his name, to his wife, Julia Veres, by a warranty deed. Plaintiff herein was later appointed administrator of the estate of Eva Mae Sechrist, and as said administrator, filed suit in this court against Joseph Veres, praying for damages for himself and next of kin for wrongful death. Subsequent to the filing of said suit for wrongful death, and before judgment was obtained, the petition in this case was filed.

The petition alleges that said conveyance of real estate was made without consideration, that it was fraudulently made to defraud creditors, and particularly the plaintiff in this action. Subsequently, judgment was awarded the plaintiff in the damage suit for wrongful death. Plaintiff is now seeking in this court to cancel and set aside the deed dated November 8, 1935, conveying all the property of Joseph Veres to Julia Veres, his wife.

To this petition the defendants filed their answers admitting the conveyance of all the real estate by deed, and denying each and every and singular all allegations set forth in the petition.

The plaintiff herein was not actually a creditor at the time this property was conveyed. At best he then had only a cause of action. He afterwards became a creditor and so was a subsequent creditor. We must first determine, therefore, the rights of a subsequent creditor under the statutes and case law of the state of Ohio,

before determining the rights of the parties in this case.

The treatment of the rights of creditors through the years has not always been of the sort that makes for coherency or consistency. According to the strict common law, the conception is, that plaintiff can only establish himself as a creditor by the judgment of a court pronouncing upon his claim. Under the early law, it was only such judgment creditors who could avail themselves of the rights conferred by the statute of fraudulent conveyances. A study of the early cases reveals that neither common law nor equity was capable of relieving against wrongs perpetrated upon a creditor without the protection of the statute of fraudulent conveyances, and then only under certain circumstances. The first statute of fraudulent conveyance was passed in England in the year 1577, which declared void as against creditors and others, all the debtor's transfer of property when made with intent to delay or defraud them. It was this original English statute which has passed with the common law into statute law of Ohio. These wrongs might have been righted by the gradual growth of equity and the powers of chancery in England, but history shows that redress was asked by means of legislation and not by equity procedure.

In 27 Corpus Juris, page 723, §573, we find that it has been uniformly held that in the absence of statute expressly or impliedly provided otherwise, the creditor must acquire a specific lien upon the property which constitutes the subject matter of an alleged fraudulent conveyance in order that he may ask a court of equity to set it aside and that this lien must exist at the time of the filing of the bill or at least before issue joined. Where a creditor seeks to set aside a fraudulent conveyance, the lien or vested right in the property and the fraudulent obstruction to the adequate enforcement to his lien or right, are the only essentials to the jurisdiction of equity. The foot-note of this section in Corpus Juris cites the case of Bustard v Dabney, 4 Ohio 68. This rule is founded upon the principle of the common law essential to the enjoyment and circulation of property that every debtor, until his property is specifically bound to the satisfaction of his debt by his own agreement or by some judicial proceeding, has an absolute right to dispose of it at pleasure, to prefer one creditor to another, or even to waste or destroy it, a power which no

tribunal whatever has authority to limit or control.

We, therefore, must examine our statutes and case law to determine whether or not by statute or by common law the state of Ohio has followed the rule founded upon the principle of the common law.

The statute law of the state of Ohio protects creditors from the unlawful conveyance of real estate. §8618, GC, provides:

"Every gift, grant or conveyance of lands * * * made or obtained with intent to defraud creditors of their just and lawful debts or damages * * * shall be utterly void and of no effect."

Sec 11104, GC, provides:

"A sale, conveyance, transfer, mortgage or assignment, made in trust or otherwise, by debtor or debtors * * * with a design to prefer one or more creditors to the exclusion in whole or in part of others, and a sale, conveyance, transfer * * * procured by him or them to be rendered in any manner with intent to hinder, delay or defraud creditors, shall be void as to creditors of such debtor or debtors at the suit of any creditor or creditors * * *."

Sec 11105, GC, provides:

"The provisions of the next preceding section shall not apply unless the person or persons to whom such sale, conveyance, transfer, mortgage or assignment is made, knew of such fraudulent intent on the part of such debtor or debtors * * *."

The latter section is for the purpose of protecting bona fide purchasers of property for value. The former sections prevent the conveyance of lands made or obtained with intent to defraud creditors by declaring that they shall be void and of no effect.

The sections of the General Code hereinbefore referred to use the word "creditors," and not the words "subsequent creditors." Whether or not the word "creditors" can be construed as to include "subsequent creditors" within this meaning, leads us to a consideration of the case law of the state of Ohio. We should further interpret the case law of the state with reference to the rights of "subsequent creditors."

In 1870 the case of Evans et v Lewis, 30 Oh St 11, came before the court on the question of the admission of testimony which might disclose the intent that prompted a conveyance from Thomas Evans to Elizabeth Evans, his wife. The action was filed to set aside a conveyance on the ground that it was fraudulent, and that the same was done for the purpose of defrauding the plaintiff. Plaintiff was a subsequent creditor in that his right against the defendant was only a cause of action, not reduced to judgment at the time the conveyance took place. The answer denied the fraudulent intent and purpose and alleged the conveyance was made in good faith, in pursuance of a promise and an agreement made by the husband to and with his wife, nearly one year before the execution of the deeds in question and before the cause of action on which plaintiff recovered her judgment had accrued.

The court held that the evidence showing the prior agreement should have been admitted. In the syllabus the court defined "subsequent creditor" as follows:

"One having a valid cause of action, sounding in tort, against such grantor, at the time of such conveyance, upon which an action was subsequently brought and judgment recovered, is to be regarded as a subsequent creditor."

In White v Gates, 42 Oh St 109, the case of Evans v Lewis, supra, was cited approvingly, with the statement that the fact that an action was pending for damages at the time of the sale and transfer of the property was immaterial.

The case of Evans v Lewis, supra, was again followed in Stuard v Porter, 79 Oh St 6.

The Circuit Court has also had occasion to pass upon the question with the same holding, in the case of Detwiler v Louison, 10 C.D. 95, 97.

In the case of Pfisterer v The Toledo Traction Company, 89 Oh St 172, the case of Evans v Lewis, supra, was approved and followed. The court, however, found upon the facts in this case that the grantee was a bona fide purchaser for value and that no fraud existed.

"Plaintiff has utterly failed to make any proof that he was a creditor of the vendor company at the time of the sale and therefore he has established no title to maintain this suit as a prior creditor. Nor has he made any proof of actual fraud which would entitle him to maintain the action as a subsequent creditor."

We again find reference to a subsequent creditor. The court by dicta is requiring

a subsequent creditor to show proof of actual fraud, following, in this instance, the case of Creed v Lancaster Bank, 1 Oh St 1, and also part of the dicta in the Evans v Lewis case, supra, which reads as follows:

"Such conveyance will be set aside at the suit of a subsequent creditor only on proof that it was made with the intent on the part of the grantor thereby to defraud such subsequent creditor or creditors."

In determining the case of Pfisterer v The Toledo Traction Company, 89 Oh St 172, in which the court set forth that it followed the case of Evans v Lewis, 30 Oh St 11, as the pioneer case in Ohio, it is interesting to note that in the case of Evans v Lewis, 30 Oh St 11, there is absolutely no argument adduced in the opinion to show the truth of the principle that one having a valid cause of action sounding in tort is a subsequent creditor. Nor does it hold that one asserting such right of action in a suit is a subsequent creditor. The court merely said that the existence of such cause of action clearly does not establish the relation of debtor and creditor between a wrong-doer and the party injured. The case of White v Gates, 42 Oh St 109, extended the Evans case so as to make a plaintiff in a suit for a tort, already begun at the time of the fraudulent conveyance, a subsequent creditor. There is no argument, however, and the court referred to the Evans case to sustain this ruling when the Evans case only decided that a valid cause of action sounding in tort made one a subsequent creditor. It therefore appears that the later cases, following the Evans case, assumed a condition of law to exist in the state of Ohio which really did not exist, but the courts in so holding have followed the liberal and modern trend concerning the rights of creditors.

We find our next discussion of the rights of a subsequent creditor in the case of Schubeler, an infant, v Lilly, 23 Oh Ap 481 (6 Abs 469). In this case the lower court sustained a demurrer to the petition on the ground that it did not state a cause of action sufficient to set aside a conveyance of property. The upper court reversed the judgment of the lower court, holding that the petition did set forth facts sufficient and broad enough to permit the plaintiff to introduce proof that the transfer of the property was made with the actual intent to defraud subsequent creditors. It is interesting to note that this

is the first case, involving the discussion of the rights of subsequent creditors, which refers to §8618, GC.

We then come to the case of Friedel, Admrx. v Wolfe et, found in 41 Oh Ap 565. This was a case where a subsequent creditor brought an action to set aside a conveyance for the reason that the same was done to hinder and delay the execution of the judgments of creditors, and was done with the intent to defraud. Again the Common Pleas Court sustained a demurrer to the petition, and again the upper court reversed this judgment and remanded the case for further proceedings.

The facts in this case are somewhat similar to the case at bar, except that it was admitted that the conveyance in the Friedel case was without any consideration. This case, however, goes one step farther with reference to the law of the rights of a subsequent creditor, and holds that where there is a subsequent creditor, in order to defeat his claim, a man who transfers his property must not only intend to convey it for the purpose of defrauding the subsequent creditor out of a claim which such person might afterwards acquire against the transferror, but in order to be reached by an action to set it aside the party purchasing the property, the grantee, must also intend to aid the transferror in defeating the right of the subsequent creditor, or must be a gratuitous grantee.

The case of Pfisterer v Toledo, supra, is distinguished because the defendant therein was a bona fide purchaser for value. But the court in setting forth the law which we believe is applicable to the case at bar, quotes as follows in the syllabus of the Friedel case:

"That 'subsequent creditor' may reach property transferred, transferror must have intended to defraud him, and transferee to have aided or be gratuitous grantee."

And in the dicta of the case:

"We recognize and acquiesce in the doctrine of the case of Pfisterer v Toledo, supra, but where a person against whom a cause of action exists, either before it has ripened into a judgment, or even if before suit is brought, with intent to defraud, puts his property beyond reach of a judgment subsequently obtained, and transfers it without any consideration to a person who has knowledge of his intention and joins in it, such a transfer may be attacked, and the courts will set aside such a transaction; otherwise all one would have

to do as soon as one had laid himself liable to a tortious action, would be to transfer his property to his wife, or friend, and avoid responsibility, so far as being compelled to pay anything is concerned. That is not the law.

"Now there is an ancient maxim that is as old as the law, and perhaps older, that a man must be just before he is generous. He cannot give to his wife nor to any other person, for that matter, and thus avoid his legal obligations."

We believe, as set forth in 27 C. J. 415, that the law is well settled that statutes for the suppression of fraud, including statutes against fraudulent conveyances are to be equitably or liberally ▉▉▉▉▉▉ ▉ expounded for the prevention of fraud and the protection of creditors. Liberally construing §8618, GC, we believe that the word "creditors" should be construed to ▉▉▉▉▉▉ ▉ include the words "subsequent creditors" within its meaning. The cases, however, require the intent to defraud to apply to both grantor and grantee.

It is interesting to note that all the cases setting forth the rights of subsequent creditor in Ohio to set aside a fraudulent conveyance are cases that were determined upon demurrers that were sustained to the petitions in the lower courts, reversed by the upper courts, and then remanded to the lower court for further proceedings. These cases were all determined upon preliminary matters and not upon the final submission of all the evidence. Each case, therefore, must rest upon its own merits.

Case law in Ohio, therefore, provides that a subsequent creditor can ▉▉▉▉▉▉ ▉ sustain an action to set aside a conveyance providing the following proof is maintained:

1. That there was an intention to avoid or evade the liability of subsequent creditor, and,

2. That the transfer was without consideration or that the grantee participated in the intended wrong.

Our case law, therefore, as affected by existing statute, although following the modern trend with reference to rights of creditors and subsequent creditors, would be better served in the future if the state of Ohio would follow a decided number of states and enact the Uniform Fraudulent Conveyance Act recommended for consideration by all the states.

With these rules of law in mind, we come to a discussion of the facts that are involved in the case at bar.

Evidence was permitted to be introduced showing some contribution on the part of the wife in the acquisition of this property by Joseph Veres, seventeen years ago. The court considers this evidence immaterial to the issues before the court because there is no claim that a constructive trust exists in favor of the defendant, Julia Veres, upon a one-half interest in this property. We rely upon the case of **Milburn v Conrey, 22 Abs 412.**

"A party who furnishes the purchase price of property to be bought by another in the other's name, intends that the property purchased will inure to his benefit, in a transaction between strangers.

"In a transaction between near relatives, a presumption arises that the party furnishing the purchase price of property to be bought by another is making an advancement or gift to the grantee who takes title in his own name. This intent, however, is rebuttable by clear and convincing evidence."

In determining the question of actual or constructive fraud, we must look to all the facts and circumstances to glean the truth, because people making conveyances of real estate do not publish what they intend to do. From the evidence the court considers the following facts and circumstances material for the determining of this case.

1. The relationship of the parties to the deed is that of husband and wife.

2. Joseph Veres knew that he had committed an unlawful act at the time that he conveyed his property. He knew the significance of his acts. He thought that he was going to be electrocuted. He had attempted to give all his property to his wife immediately after he had committed the unlawful act. He attempted this gift by means of a purported will.

3. This deed was executed seven days after the unlawful act was committed.

4. This deed conveyed all the real estate owned by the defendant, Joseph Veres, to his wife. The bank account in the name of Joseph Veres was transferred to a daughter at the same time that the real estate was conveyed. The children of the defendant sold personal property from the farm until they were enjoined from so doing by this court.

5. This deed was not made out or executed until the children of the defendants arrived and took this matter in hand. They

consulted an attorney, contacted the justice of the peace, and arranged for the making and executing of this deed. The court believes that they were acting as the agents of Julia Veres and she is bound thereby.

6. The children of the defendants testified that the bank account transfer was made by their father to the daughter because they were afraid the state of Ohio would take it to cover costs involved in the murder suit. This evidence clearly shows the intention of the parties to defraud creditors, although the evidence pertains to the state of Ohio only as a creditor. This same intention would apply to all other creditors.

7. This deed called for the payment of one dollar and other valuable consideration. The sum of one dollar was not paid directly but only indirectly at the time of the execution of the deed. The agreement was for the payment of twenty-five dollars. No such amount was paid at the time of the execution of the deed.

8. The consideration price of twenty-five dollars, in the judgment of this court, was never paid. Food and money for a period of seven weeks was regularly paid over to Joseph Veres. Contention is made that this is part of the consideration for the execution of the deed. By taking food into the jail and sending the defendant, Joseph Veres, spending money, Julia Veres was not doing any more than any other wife would do under the same or similar circumstances. Other valuable consideration for the conveyance of this real estate provided that the defendant, Julia Veres, would continue to send spending money to Joseph Veres during the remainder of his period of life, and give him a decent funeral. At the time of this alleged oral agreement the defendant, Joseph Veres, expected to be electrocuted. Any wife and family would give the husband or father a decent funeral or burial. In the judgment of this court the consideration involved did not require the defendant, Julia Veres, to do anything that she would not have naturally done for her husband. There was further testimony of the payment of five dollars to Joseph Veres at the time of a Christmas dinner in the jail. The court heard his testimony, saw the witnesses, and does not believe that any wife would pay over five dollars to her husband for spending money and make such a statement and still claim to be innocent.

9. No actual consideration passed between the defendants at the time of the execution of the deed. The other consideration alleged to be performed in the future and relied upon as an adequate consideration by the defendants herein does not constitute an adequate consideration in the mind of the court.

10. The testimony discloses that the real estate involved had a market value ranging from approximately two thousand to twenty-five hundred dollars. One dollar or twenty-five dollars consideration price raises a further serious question of the inadequacy of consideration.

11. The intention of the parties is evident, for they intended that Joseph Veres make a will. Why didn't Joseph Veres make a will? Why did he change his mind?

12. The good faith of Julia Veres, as well as her intention in this matter, is indirectly shown by the fact that the execution of the deed, the promise and alleged agreement was made at her solicitation.

13. It is claimed that Julia Veres, the wife, is an innocent party and knew nothing concerning civil liability. Again the court disagrees. It is true she is of foreign descent but she has lived in this country for at least twenty years, and the fact that she does not speak English does not mean that she does not understand the significance of the unlawful acts of her husband. She certainly demonstrated her intelligence when she insisted that the paper known as Defendant's Exhibit No. 1 was not sufficient to give her the real estate. She said: "I had no faith in it." By her evidence she testified that this entire agreement was made at her solicitation. Further, the court believes that her children acted for her as her agent and that she is bound thereby.

Sec 8618 GC, hereinbefore set forth uses the words:

"Every conveyance obtained with intent to defraud creditors shall be utterly void and of no effect."

In 27 C. J. 416, we find a resume of the tests to be applied by the court to the facts involved to determine fraudulent conveyances.

"The question in every case, except in most jurisdictions, in the case of a voluntary conveyance, is whether the conveyance was a bona fide transaction or a trick and contrivance to defeat creditors, or whether it reserves to the debtor an advantage inconsistent with its avowed purpose. It is not sufficient that it was founded on a good consideration or was made

with a bona fide intent; it must be both; and if defective in either of these particulars, although good between the parties, it is voidable as to creditors. The rule is universal both at law and in equity that whatever fraud creates justice will destroy. One of the principal elements of the test as to whether or not a conveyance is fraudulent is: Does it prejudice the rights of the creditors?"

The court is of the opinion that fraudulent intent exists in the case at bar, arising as an inference of law from the facts disclosed. If this conveyance of property is not set aside. under what state of facts would a conveyance alleged to be fraudulent be set aside?

Good faith in any transaction is measured by the result of such transaction because parties are presumed to intend the natural consequences of their own acts, and to the extent that a conveyance is found to work a fraud, to that extent is a fraud presumed to have been intended.

"If the intent exists, it is immaterial under the statutes whether its existence is proved by evidence directly or is to be inferred as a matter of law from the nature of the transaction. Good faith in law is not to be measured always by a man's own standard of right but by that which it has adopted and prescribed as a standard for the observance of all men in their dealings with each other. The good faith of a party under certain circumstances must be determined by the legal effect of what he deliberately does."
19 O. Jur. 751.

The court can only be guided and influenced by the indicia or badges of fraud which are found to be prevalent from the evidence in the case. We find discussions of the various badges of fraud in 19 Ohio Jurisprudence.

"Page 682, §4: The terms of the Ohio statutes are very broad and include most forms of transfers and transactions whereby creditors or others may be defrauded. The law regards the thing which the debtor has done rather than the means by which he accomplished it. Equity in either case, looking through the form to the substance of the transaction, will not hesitate to grant relief in accordance with the evident object and purpose of the statute."
"Page 685, §7: Indicia of fraud—generally.

"Page 686, §39: Insolvency or indebtedness of grantor.
"Page 687, §10: Conveyance in anticipation of litigation.
"Page 688, §11: Transfer of entire estate to debtor.
"Page 692, §15: Relationship of parties.
"Page 693, §16. Miscellaneous badges of fraud.
"Page 749, §73: Constructive, fraudulent intent.
"Page 752, §75: Inadequacy of consideration.
"Page 754, §78: Future support.
"If a person conveys property wholly or in substantially part, in consideration of an agreement to support him in the future, and by the conveyance renders himself unable to pay his debts, the conveyance is invalid as to existing creditors.
"Page 757, §81: Voluntary conveyances—in general."

This court is of the opinion from the evidence that equity demands the setting aside of this conveyance. that there was an intention to avoid and evade the liability of the plaintiff, a subsequent creditor, that this conveyance of real estate was without adequate consideration, and further, that the grantee participated in the intended wrong.

It is, therefore, the judgment of this court that the conveyance by warranty deed of November 8, 1935, from Joseph Veres to Julia Veres of certain real estate be set aside and that said deed is hereby cancelled and set aside.